STATE of Indiana, DEPARTMENT OF
NATURAL RESOURCES et al.,
Defendants-Appellants,

v.

Arthur J. TAYLOR and Juanita Taylor,
Plaintiffs-Appellees.

No. 1–1080A308.

Court of Appeals of Indiana,
First District.

April 28, 1981.

Rehearing Denied June 5, 1981.

Linley E. Pearson, Atty. Gen., of Indiana, G. Richard Potter, Deputy Atty. Gen., Indianapolis, for defendants-appellants.

James W. Boswell, III, McCormick, Weber & Boswell, Terre Haute, for plaintiffs-appellees.

NEAL, Presiding Judge.

This is an interlocutory appeal by the State of Indiana, Department of Natural Resources, Natural Resources Commission, and its individual members (Department) from a denial of its motion for summary judgment in the Parke Circuit Court, in a suit filed by Arthur J. Taylor and Juanita Taylor (Taylors) for damages, injunctive relief, and judicial review of an order of the Department.

We reverse.

## STATEMENT OF THE FACTS

Taylors' complaint filed on April 13, 1976, alleges the following facts. In 1954 Taylors commenced the construction of a dam on their property. In 1967 they consulted the Department and were told that no permit for a dam was necessary because the dam and lake were wholly on their property. Taylors continued to work on their dam and stocked the attending lake with fish. However, on April 19, 1974, the Department issued an order for them to stop any further construction on the dam. A hearing regarding the safety of the dam was subsequently held on May 23, 1974, before the Natural Resources Commission, and on May 30, 1974, Taylors were ordered to cease further construction on the dam, to dewater the lake, and to breach the dam. Thereafter Taylors filed a petition for the right to introduce newly discovered evidence. They alleged that numerous letters were written to the Department which remained unanswered. On March 27, 1975, a hearing was held pertaining to the newly discovered evidence, but the ruling thereon was deferred until September 25, 1975, nearly 16 months after the original order issued. By its ruling the Department affirmed the prior order.

Further, the complaint indicates that on September 25, 1975, Taylors filed a petition for judicial review of the Department's order in the Parke Circuit Court. The Department did not certify the various letters, orders, and transcript until January 20, 1976. The record does not indicate the disposition of the proceedings on judicial review of the administrative action. The Taylors express in their appellee's brief on this appeal, however, that on some unspecified date, "a hearing was had and the Parke Circuit Court set aside the Commission's Order of September 25, 1975, which had required the Taylors to dewater their lake and breach their dam."

On March 17, 1976, Taylors filed a Notice of Tort Claim, pursuant to Ind. Code 34–4–16.5–9, against the Department, based on its action in the above-mentioned proceedings. Before expiration of the ninety-day period provided by the Tort Claims Act for the State to respond, Taylors filed a suit for damages, injunctive relief, and judicial review against the Department, thus commencing the instant case.

The record, submitted by the Department, reveals that in 1979 a second administrative hearing was held before a hearing officer for the Department. This hearing was held to determine whether Taylors' dam was constructed "in violation of the Indiana Flood Control Act and whether the dam is unsafe and dangerous to life and property under Ind. Code 13–2–20–1, et seq." The hearing officer's report and recommendation, which were later approved and adopted by the Department as a final order, reflected a finding adverse to Taylors.

Taylors sought judicial review of the 1979 order in the Parke Circuit Court. This was venued to the Montgomery Circuit Court,

which upheld the administration action. That court's action upon the judicial review appears from the record not to have been appealed by Taylors.

The complaint in the present case contains six pleading paragraphs; as condensed by Taylors in their brief, the bases of this action are stated as follows:

"1. The Commission's actions were arbitrary, capricious and an abuse of discretion;

2. The Commission's actions were in excess of statutory authority;

3. The Commission's actions violated the Taylors' constitutional rights;

4. The Commission's actions were without observance of procedure required by law;

5. The negligence of the defendants;

6. The Commission should be estopped from ordering the Taylors to dewater their lake and destroy their dam due to the fact that the Taylors were previously informed by the Commission that no license or permit would be necessary because the dam and lake were located on the Taylors' own property; and

7. The individuals named, while not acting in pursuance of their lawful duties, intentionally and willfully committed certain acts all to Taylors' damage, which acts were ratified by the Commission."

The various paragraphs of the complaint prayed for damages, actual and punitive, injunctive relief, and judicial review.

## ISSUES

The Department argues that its motion for summary judgment was erroneously denied for the following reasons:

I. The Department and the individuals therein are immune from liability for damages under Ind. Code 34–4–16.5–3 of the Indiana Tort Claims Act; and

II. The January 23, 1980, judgment of the Montgomery Circuit Court, which sustained the Department's 1979 Order should operate to bar the present suit under the doctrine of res judicata.

## DISCUSSION AND DECISION

An order denying a motion for summary judgment is generally not an appealable interlocutory order, and is generally to be challenged by a motion to correct errors after a final judgment or order is entered. Ind. Rules of Procedure, Trial Rule 56(E); *Pitts v. Wooldridge*, (1974) 161 Ind.App. 404, 315 N.E.2d 736. However, Ind. Rules of Procedure, Appellate Rule 4(B)(5) permits us to entertain review, upon certification by the trial court, of such an appeal if we determine certain criteria are met. A.R. 4(B)(5) states that appeals from interlocutory orders may be taken to this court in the following situations, among others:

"(5) Any other interlocutory order, if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

(a) The appellant will suffer substantial expense, damage or injury if the order is erroneous and the determination thereof is withheld until after judgment, or

(b) The order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case. . . ."

The parties present no conflict in the operative facts as recited above and agree that there is no genuine issue of material fact necessitating resolution. Our review is thus limited to consideration of whether the trial court erred in denying the Department's motion for summary judgment, a finding that necessarily implies that Taylors have demonstrated a cause of action sufficient to withstand the defenses interposed by the Department. Since the Department has raised defenses which, if applicable, will entitle it to judgment as a matter of law, we find that the requisites of A.R. 4(B)(5)(a) and (b), *supra*, are present, and we proceed to consider the appeal.

Prior to a discussion of the specific merits of each of the two issues presented by the Department, a review of the powers of the Department is necessary. The De-

partment of Natural Resources, a component of which is the Natural Resources Commission, was created by the legislature in 1965 by Acts 1965, c. 441, s.2 (Ind. Code 14–3–3–2). It inherited the powers and duties of the Indiana Flood Control and Water Resources Commission. Ind. Code 14–3–3–8. Under the Flood Control Act, owners of dams are required to maintain them in such a state of repair as required by the exercise of prudence, due regard being had for life and property and the application of sound and accepted engineering standards. Ind. Code 13–2–20–2. The enforcement of the Act is one of the duties of the Department. It has the right and duty to make rules and set standards. Ind. Code 13–2–20–3. It has a duty to inspect dams, and if it finds that a dam is not safe, it has authority to issue orders directing the owner of the dam to make changes and alterations, or even remove the dam completely. Ind. Code 13–2–20–4.

### Issue I.  Tort claim immunity

■ Ind. Code 34–4–16.5–3, the immunity section of the Indiana Tort Claims Act, contains fourteen circumstances in which immunity from tort liability is retained by governmental bodies. As relevant here, the section provides:

"A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

\* \* \* \* \* \*

(5) the initiation of a judicial or administrative proceeding:

(6) the performance of a discretionary function;

(7) the adoption and enforcement of or failure to adopt or enforce a law, including rules and regulations, unless the act of enforcement constitutes false arrest or false imprisonment[.]"

A governmental entity cannot be liable in punitive damages. Ind. Code 34–4–16.5–4. "State" means Indiana and its agencies. Ind. Code 34–4–16.5–2(6) (Supp.1979). An "agency" is defined as a "board, commission, department, division, governmental subdivision including a soil and water con-servation district, bureau, committee, authority, military body, or other instrumentality of the state...." Ind. Code 34–4–16.5–2(7) (Supp.1979).

Therefore, the Department is clearly a state agency within the purview of the Tort Claims Act, and with this conclusion the Taylors do not disagree. Only a few cases exist construing the immunities granted under the Tort Claims Act. *Garner, Admrx. v. City of Michigan City*, (1978) 453 F.Supp. 33, applied Ind. Code 34–4–16.5–3(11) to a drowning in Lake Michigan. Malicious prosecution was held immune in *Livingston v. Consolidated City of Indianapolis*, (1979) Ind.App., 398 N.E.2d 1302, in an application of subsection (5). In *Foster v. Pearcy*, (1979) Ind., 387 N.E.2d 446, our Supreme Court, while primarily deciding the case upon the common law immunity enjoyed by a prosecuting attorney, noted:

"[T]he duty to inform the public can be characterized as a discretionary function and thus would fall within the *absolute immunity* granted under the Indiana Tort Claims Act. IC § 34–4–16.5–3(6) [Burns Supp. 1978]. This decision will insure that the prosecutor will be able to exercise the independent judgment necessary to effectuate his duties to investigate and prosecute criminals and to apprise the public of his activities. It will also allay the apprehensions about harassment of prosecuting attorneys from unfounded litigation which deters public officials from their public duties." (Emphasis added.)

387 N.E.2d at 449. In *State v. Whitney*, (1978) Ind.App., 377 N.E.2d 652, the court denied the State immunity, claimed under the enforcement of the law provision of Ind. Code 34–4–16.5–3(7), only because injury occasioned plaintiff grew out of a false arrest, a clear exception to subsection (7).

Taylors do not dispute the vitality of the immunity provisions but assert:

"As set forth above, the Taylors are not alleging that their loss was due to the enforcement of a law, the initiation of an administrative proceeding, or the performance of a discretionary function, as

the Commission would like this court to believe. But, in fact, the Taylors are basing their claim upon the theories set forth above which grounds do not shelter and give the Commission any immunity from liability therefrom."

Aside from this blanket conclusion, Taylors develop no cogent argument as to why the "theories" of their case do not relate to, or are not based upon, the Department's initiation of an administrative proceeding, performance of a discretionary function, or the enforcement of rules and regulations. They further posit no authority in such support of their contention.

■ If immunity exists, the public body and the employees simply are not liable. The degree of the Department's culpability, and the nature of its tortious conduct, are not relevant considerations. A plaintiff may not escape the immunity provisions of the Tort Claims Act by merely characterizing his action as something that it is not. The essential act complained of by Taylors was the issuance of an order to abate an unsafe dam. Insomuch as this action was undertaken by the Department pursuant to a duty entrusted to it by statute, it qualifies for immunity under Ind. Code 34–4–16.5–3 (5), (6), or (7), so far as any tort liability is concerned under the theories of negligence or intentional tort denominated in Taylor's complaint as Nos. 5 and 7 as set forth in the Statement of the Facts, *supra*.

We find the reasons stated by our Supreme Court in *Foster, supra,* relative to immunity to prosecuting attorneys, applicable here. The policy of the law is to prevent the harassment by threats of civil litigation of public officials in the performance of their duties.

■ We note, further, the following provision of the Dams, Dikes and Levees Regulation Act, Ind. Code 13–2–20–1 through 13–2–20–8.

"The provisions of this act shall not be construed as creating any liability for damages against the Indiana flood control and water resources commission [nat-ural resources commission] and/or against its officers, agents and employees caused by or arising out of the construction, maintenance, operation or failure of any dam, levee, dike or floodwall and appurtenant works *or by the issuance and enforcement of any order or regulation issued by the said commission in pursuance of its lawful duties."* (Emphasis added.)

Ind. Code 13–2–20–8. This protective section was mentioned in passing by the Department in its brief and ignored by Taylors in their brief. It appears to us that the emphasized portion of the section clearly applies to the instant case, and shields the Department and its employees from this action for damages.

*Issue II. Res judicata*

■ The Department argues that the judgment of the Montgomery Circuit Court, which sustained upon judicial review the order of the Department entered after the 1979 hearing, should operate to bar the present suit on the principles of res judicata. We note that the 1979 hearing occurred nearly three years after the case *sub judice* was initiated, which suit is based upon the Department's order of 1974. We find it unnecessary, however, to consider whether the doctrine of res judicata is applicable to the present controversy.

In another section of its brief the Department discusses the Administrative Adjudication Act (AAA), Ind. Code 4–22–1–1, *et seq.* The Taylors inform us in their brief that they sought judicial review of the initial agency action in the Parke Circuit Court resulting in the Department's order being set aside. We are of the opinion that the proper disposition of the remainder of Taylors' contentions will result upon analysis of the exclusiveness of remedy feature of the AAA, as it relates to the disputed Department activity in the instant case.

We noted in a recent case the bifurcated quality of the AAA. The first part of the AAA (Ind. Code 4–22–1–3 through 4–22–1–13) covers administrative procedures before an agency. The second part (Ind. Code

4–22–1–14 through 4–22–1–19) delineates the procedure for judicial review of administrative orders, decisions, or determinations not clearly and unambiguously excepted therefrom. *Warram v. Stanton*, (1981) Ind. App., 415 N.E.2d 114.

Section 14 of the AAA (Ind. Code 4–22–1–14) provides for judicial review of final agency action upon petition by an aggrieved party to the Circuit or Superior Court in the County where such person resides or where the order is to be carried out and enforced, alleging that the order, decision, or determination is:

"(1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

(2) Contrary to a constitutional right, power, privilege or immunity; or

(3) In excess of statutory jurisdiction, authority or limitations, or short of statutory right, or

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence."

The petition must be filed within 15 days following the receipt of notice by the aggrieved party and, if not, all rights of judicial review and all rights of recourse to the courts are terminated. *Id.*

In *Warram, supra,* we reviewed the procedural requirements for judicial review of administrative acts. There we said:

"In *Suttmiller v. City of Batesville,* (1967) 248 Ind. 391, 226 N.E.2d 893, our Supreme Court stated at 248 Ind. 393, 226 N.E.2d 893,

'In the absence of statutory provision for appeal or other direct review, we have held that the validity of an administrative action may be challenged by an equitable action of injunction or an action for a declaratory judgment. However, where there is a statutory means of review, it must be followed. A resort to an independent action will not be permitted. *Mann v. City of Terre Haute et al.* (1960), 240 Ind. 245, 163 N.E.2d 577; *City of E. Chicago v. Sinclair Ref. Co.* (1953), 232 Ind. 295, 111 N.E.2d 459.'

Earlier, in *Public Service Commission v. City of Indianapolis,* (1956) 235 Ind. 70, 131 N.E.2d 308, it was stated,

'It is established law in this state that there is an inherent right to appeal to the courts for relief against the violations of personal or property rights as a result of administrative action. The legislature may not absolutely deprive one of such relief or judicial review. However, where the statute provides for a procedure for such review or for a judicial remedy, it excludes any common law or equitable procedure to the extent such statutory provisions are adequate in protecting and preserving such substantive rights guaranteed by the constitution, the statutes or general principles of law. Such statutory procedure must be followed at least to the extent of the remedy available before resort is made to any common law or equitable remedy.' (Citations omitted.) 235 Ind. at 83, 131 N.E.2d 308."

415 N.E.2d 116–17. *Warram* further stated that failure to comply with the statutory mandate is jurisdictional. Thus the only judicial remedy available to Taylors was, and is, judicial review in accordance with the AAA. They may not, as they attempted here, file an independent action. We have examined Taylors' complaint, as related above, and determine that it sought in the instant action precisely what it should have sought, and presumably did seek, in its initial judicial review proceeding which, apparently, culminated in Taylors' favor.

Having determined that the Department and its members are immune from liability for damages for the reasons set forth in Issue I, and that in all other respects Taylors are restricted to the judicial review procedures of the AAA, we hold that the trial court erred in denying the Department's motion for summary judgment. There are no genuine issues of material fact to be resolved and the Department is entitled to judgment as a matter of law.

This cause is therefore reversed and remanded with instructions to the trial court to enter judgment in favor of the Department upon its motion for summary judgment.

Reversed and remanded.

ROBERTSON and RATLIFF, JJ., concur.